UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

JAMES BROWN,

        Plaintiff,

v.

C.O. ALICE WOMACK, KELLY SMITH, C.O. B. GILES, WARD, and Q. SCUSSIM,

        Defendants.
_____

**DECISION AND ORDER**

1:16-CV-00031 EAW

## INTRODUCTION

Plaintiff James Brown ("Plaintiff"), a prisoner previously confined at Wende Correctional Facility ("Wende"), filed a *pro se* complaint asserting claims under 42 U.S.C. § 1983 against a variety of Wende staff members based upon alleged events occurring at that facility in 2013 and 2014. (Dkt. 1). Currently pending before the Court is a motion for summary judgment filed by defendants Alice Womack ("Womack"), Kelly Smith ("Smith"), Ward Bonds ("Bonds") (named in Plaintiff's Amended Complaint as "Ward, Civilian Cook"), and Quentin Scussim ("Scussim") (collectively "Defendants")[1]. (Dkt. 44). For the reasons that follow, the Court grants Defendants' motion in part and denies Defendants' motion in part.

_____

[1]     Named defendant C.O. B. Giles has never been served, nor has he appeared in this action. The Court discusses the status of Plaintiff's claims against C.O. B. Giles later in this Decision and Order.

- 1 -

## FACTUAL BACKGROUND

The following facts are taken from Defendants' Statement of Undisputed Facts (Dkt. 44-1) and the evidence in support thereof, which was submitted in compliance with Local Rule of Civil Procedure 56(a)(1). Plaintiff did not, as required by Local Rule 56(a)(2), submit an opposing statement of facts that included a response to each of the statements set forth in Defendant's Statement of Undisputed Facts. Instead, Plaintiff submitted a "Statement of Material Facts" that solely addresses his claim that he was improperly denied food. (Dkt. 46 at 12). Accordingly, the Court deems Defendants' Statement of Undisputed Facts admitted "except where specifically controverted by the evidence that [Plaintiff] submitted." *Xerox Corp. v. Bus-Let, Inc.*, No. 18-CV-6725-FPG, 2019 WL 2514855, at *1 n.1 (W.D.N.Y. June 18, 2019); *see also* L. R. Civ. P. 56(a)(1) ("Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.").

At all times relevant to the instant lawsuit, Plaintiff was an inmate in the care and custody of the New York Department of Corrections and Community Supervision ("DOCCS"). (Dkt. 44-1 at ¶ 1). The instant lawsuit concerns events occurring at Wende in 2013 and 2014. (*Id.* at ¶ 2).

### I. Alleged Denial of Food

During the relevant time period, Smith was employed by DOCCS at Wende as Food Service Administrator II, while Bond was Wende's head cook. (*Id.* at ¶¶ 2-3). Womack and Scussim were corrections officers at Wende. (*Id.* at ¶¶ 7-8). In particular, Womack

was the Hall Captain in C block on the 3 p.m. to 11 p.m. shift, and Scussim was the Hall Captain in C block on the 7 a.m. to 3 p.m. shift. (*Id.* at ¶¶ 111-12).

On September 6, 2013, Plaintiff was placed on a medically prescribed diet known as the "Control A Diet." (*Id.* at ¶ 118). From September 22, 2013, to October 12, 2013, Plaintiff was placed on "keeplock," which means that an inmate cannot leave his cell for meals or programs. (*Id.* at ¶¶ 124-26). Plaintiff's disciplinary records further reflect that he was placed in the special housing unit (the "SHU") from November 7, 2013, to January 24, 2014. (Dkt. 44-7 at 7). When an inmate is placed on keeplock or in the SHU, the housing unit notifies the food service department, and a food tray for that inmate is sent at "chow time." (Dkt. 44-1 at ¶ 132; Dkt. 44-7 at ¶ 15).

Plaintiff testified at his deposition that he was denied all three of his daily meals on September 22, 23, 24, 26, 27, 28, and 29, 2013, as well as on November 1, 2, 3, 4, 7, 8, 9, 10, and 11, 2013. (Dkt. 44-1 at ¶ 127). However, these allegations are not supported by the evidence of record. Initially, Plaintiff was not placed on keeplock status on September 22, 2013, until 7:01 p.m., after the final meal of the day had been served. (*Id.* at ¶ 129). Moreover, if an inmate misses a special diet three times, the special diet is cancelled and that fact is documented, because of the time and expense of preparing special diets. (Dkt. 44-7 at ¶ 23). There is no evidence that Plaintiff's Control A Diet was cancelled or that he missed any of his Control A Diet meal trays. Moreover, while Plaintiff testified that he was denied meals on November 1, 2, 3, and 4, 2013, the evidence of record shows that he was not on keeplock or in the SHU on those dates. (*See* Dkt. 44-7 at 7). Plaintiff

acknowledged at his deposition that during the time he was allegedly being denied meal trays, he was obtaining food through the commissary. (Dkt. 44-4 at 64-65).

Plaintiff filed a grievance in November 2013 claiming that he had not received food trays. (Dkt. 44-1 at ¶ 165). Smith investigated and discovered that the food service department had not initially been informed that Plaintiff was on keeplock, and that he had missed a few meals as a result, but that the situation had been remedied as soon as the food service department was made aware of Plaintiff's keeplock status. (Dkt. 44-7 at 14).

In opposition to Defendant's motion for summary judgment, Plaintiff has submitted an unsworn "Affidavit" and a "Statement of Material Facts" wherein he has altered his allegations, now claiming that beginning on November 1, 2013, he was keeplocked and deprived of food for "15 days" as a "disciplinary measure." (*See* Dkt. 46 at 11-12).

## II. Alleged Use of Excessive Force/Indifference to Medical Needs

On May 2, 2013, a neurologist assessed Plaintiff with multiple sclerosis, with no need for acute treatment. (*Id.* at ¶ 27). Plaintiff experienced an exacerbation of his multiple sclerosis in February 2014, and was issued a permit to use a cane. (*Id.* at ¶ 42). On May 20, 2014, Plaintiff requested and received a "flats order" requiring that he be housed on the first floor of the facility. (*Id.* at ¶ 46). The flats order was good for three months, and stated that Plaintiff has a medical condition that prevents him from climbing stairs. (*Id.*; Dkt. 46 at 15).

Plaintiff claims that on June 19, 2014, Womack forced him to climb two flights of stairs to get a haircut, in violation of his flats order. (Dkt. 16 at 8). At that time, Plaintiff was housed on C block, and had been for four to five months. (Dkt. 44-1 at ¶¶ 174-75).

Plaintiff testified at his deposition that he requested that the barber come to the first floor to give him a haircut. (*Id.* at ¶ 173). He had never previously used the barber, who was located on the third floor. (*Id.* at ¶¶ 175-76). Plaintiff testified that he told Womack that he could not climb stairs and showed her his cane, but that she told him that if he wanted to get a haircut he would have to climb the stairs. (*Id.* at ¶¶ 181, 184). Plaintiff further testified that he told Womack to "forget" the haircut but that she ordered him to climb the stairs. (*Id.* at ¶¶ 184). Womack denies having ordered Plaintiff to climb the stairs, and further states that she was unaware at the time that Plaintiff had a flats order. (*Id.* at ¶¶ 182, 185). Plaintiff ultimately climbed the stairs and got a haircut. (*Id.* at ¶ 186). Plaintiff testified that he experienced pain from climbing the stairs. (*Id.* at ¶ 187).

Plaintiff further claims that on June 24, 2014, he was forced to climb stairs to retrieve his commissary purchases. The commissary at Wende is located on the second floor, and unless an inmate is confined to his cell or has a "no stairs" pass, he is required to come to the commissary to obtain his purchases. (*Id.* at ¶¶ 191-92). If an inmate has a "no stairs" pass, a copy is provided to the commissary, and the inmate's commissary purchases are delivered to him. (*Id.* at ¶ 193).

In April 2014, Plaintiff's commissary purchases began to be delivered to him. (*Id.* at ¶¶ 196-99). Plaintiff testified at his deposition that in June 2014, the commissary informed him that he did not have a "no stairs" pass and stopped delivering his commissary purchases. (*Id.* at ¶¶ 200-201). Plaintiff initially testified that Scussim had told the business office at Wende that Plaintiff did not have a "no stairs" pass, but subsequently acknowledged that this was merely an assumption, and that it could have been someone

else. (*Id.* at ¶¶ 202-204). Scussim has stated, under penalty of perjury, that he did not tell the business office that Plaintiff did not have a "no stairs" pass. (*Id.* at ¶ 215).

On June 23, 2014, Womack made arrangements with the commissary for Plaintiff's commissary purchases to be delivered to him. (*Id.* at ¶ 207). She specifically told Plaintiff that he did not need to go to the commissary. (*Id.* at ¶ 208). On June 24, 2014, Womack was not working when Plaintiff left for the commissary at approximately 2 p.m. (*Id.* at ¶ 206). The commissary had packed Plaintiff's purchases and were prepared to deliver them at 4:30 p.m. (*Id.* at ¶ 210). Plaintiff fell on the stairs on June 24, 2014, at approximately 2 p.m., while attempting to retrieve his commissary purchases. (*Id.* at ¶ 211). Plaintiff was subsequently seen at emergency sick call, where he claimed that he was trying to get to the commissary "before the regular Hall Captain came in" because she would not let him climb the stairs to the commissary. (*Id.* at ¶ 213).

## **PROCEDURAL BACKGROUND**

Plaintiff commenced this action on January 12, 2016. (Dkt. 1). Defendants answered the complaint on June 13, 2016. (Dkt. 13). Plaintiff filed a motion to amend the complaint on May 5, 2016 (Dkt. 11), and the Court adopted Plaintiff's proposed amended complaint as the operative pleading on February 27, 2017 (Dkt. 19). Defendants answered the amended complaint on March 28, 2017. (Dkt. 20).

Discovery in this matter closed on December 15, 2017. (Dkt. 30). On February 12, 2018, Plaintiff filed a motion to voluntarily dismiss his claims against then-defendants Dr. J. Levitt and Diane Toporek. (Dkt. 40). The Court granted Plaintiff's motion for voluntary dismissal on June 4, 2018. (Dkt. 48).

Defendants filed the instant motion for summary judgment on March 23, 2018. (Dkt. 44). Plaintiff filed his response on April 23, 2018 (Dkt. 46), and Defendants filed their reply on May 7, 2018 (Dkt. 47).

## DISCUSSION

### I. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*,

781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II. Plaintiff's Claims

The following claims remain in this matter: (1) Plaintiff's claim that he was denied meals in September and November 2013; (2) Plaintiff's claim that Womack forced him to climb the stairs to receive a haircut; and (3) Plaintiff's claim that Womack and Scussim forced him to climb stairs to receive his commissary. The Court considers each of these claims below.

### A. Denial of Meals

The Eighth Amendment's prohibition on cruel and unusual punishment "'require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it.'" *Jean-Laurent v. Los*, No. 12-CV-132S F, 2015 WL 1015383, at *9 (W.D.N.Y. Mar. 9, 2015) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)). A "substantial deprivation" of food—that is, "one that is sufficient to create a serious danger to the inmate's health"—can constitute an Eight Amendment violation. *Id.*; *see also Jackson v. Marks*, 722 F. App'x 106, 107 (2d Cir. 2018) ("[A] substantial

deprivation of food can cause serious physical harm sufficient to find cruel and unusual punishment in violation of the Eighth Amendment.") (quotation omitted). Accordingly, "[i]n order to establish a claim that the denial of food constitutes an Eighth Amendment violation, a prisoner must establish that a sufficiently serious condition resulted from not receiving food." *Sankara v. Montgomery*, No. 16-CV-00885 FJS TWD, 2018 WL 4610686, at *8 (N.D.N.Y. June 25, 2018) (quotation omitted), *adopted*, 2018 WL 3408135 (N.D.N.Y. July 13, 2018). A denial of only a few meals does not rise to this level. *See Jean-Laurent*, 2015 WL 1015383 at *9 (collecting cases).

Here, while Plaintiff testified at his deposition that he was deprived of all three meals on sixteen non-consecutive days, that claim is flatly contradicted by the evidence of record. As noted above, while Plaintiff testified that he was denied all three meals on September 22, 2013, the records show that he was not placed on keeplock status on that date until 7:01 p.m., after the final meal of the day had been served. Additionally, Plaintiff's claim that he was denied meals on November 1, 2, 3, and 4, 2013, because he was on keeplock status is belied by his disciplinary records, which show that his keeplock status expired on October 12, 2013, and that he was not placed in the SHU until November 7, 2013. (*See* Dkt. 44-7 at 7). Moreover, there is no evidence that Plaintiff's Control A Diet was cancelled, as it would have been had he missed three meals.

Plaintiff's new claim that he was placed into keeplock on November 1, 2013, and then denied food for 15 days, set forth in opposition to Defendant's motion for summary

judgment, is also wholly unsubstantiated.[2] First, as already noted, Plaintiff's disciplinary records show that he was not placed into keeplock on November 1, 2013. Second, Plaintiff was seen by medical personnel at Wende on November 15, 2013, due to pain and weakness on his left side. (*See* Dkt. 44-12 at 328). Plaintiff refused Tylenol and was advised to engage in light exercise. (*Id.*). There is nothing in Plaintiff's medical records from November 15, 2013, to suggest that he was suffering from any kind of malnutrition, as he necessarily would have been if he had been deprived of all meals for the previous two weeks, nor did he report such alleged deprivation to the medical staff.

It is well-established that "[a]t the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (quotation omitted). In particular, on a motion for summary judgment, a plaintiff cannot rely solely on his own testimony if it is "largely unsubstantiated by any other direct evidence" and "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." *Id.* (quotation omitted). That is precisely the case here. There is simply nothing to support Plaintiff's claim of a substantial deprivation of food, and his own testimony is riddled with inconsistencies and improbabilities. No reasonable juror could credit Plaintiff's version of events under these circumstances.

---

[2] The Court further notes that the Second Circuit has held that "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010).

A reasonable juror could find, on the record before the Court, that Plaintiff was deprived of a few meals when he was first placed on keeplock status; indeed, that fact is undisputed. However, there is no evidence that this deprivation was more than *de minimis*, or that it resulted in any danger or harm to Plaintiff. To the contrary, Plaintiff acknowledged that he had access to food via the commissary, and Plaintiff's medical records from November 15, 2013, do not demonstrate any significant medical issues. Under these circumstances, Plaintiff cannot bear the burden of demonstrating that the deprivation of a few meals due to a failure to communicate his keeplock status to the food service department rose to the level of an Eighth Amendment violation.

For all these reasons, the Court grants Defendant's motion for summary judgment as to Plaintiff's claim that he was deprived of meals, in violation of the Eighth Amendment, in September and November of 2013.

B.      **The Haircut Incident**

Turning next to Plaintiff's claim that in June of 2014, Womack forced him to climb two flights of stairs to obtain a haircut, the Court notes that it is not clear whether Plaintiff is claiming that this incident constituted an excessive use of force or a deliberate indifference to his serious medical needs. Accordingly, the Court has considered the claim under both potential theories.

1.      **Excessive Use of Force**

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255,

268 (2d Cir. 2009). In order to prove an Eighth Amendment violation based on an excessive use of force, a plaintiff must demonstrate each of the following two elements by a preponderance of the evidence: (1) the defendant used force against the plaintiff maliciously and sadistically, for the very purpose of causing the plaintiff harm; and (2) the plaintiff suffered some harm as a result of the defendant's use of force. *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992).

The first element is considered a subjective analysis of the defendant's state of mind at the time of the incident. This requires a showing that the defendant had "'the necessary level of culpability, shown by actions characterized by wantonness' in light of the particular circumstances surrounding the challenged conduct." *Goord*, 554 F.3d at 268 (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). Whether use of force against a prison inmate is unnecessary or wanton depends on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson*, 503 U.S. at 7).

The objective component considers the "seriousness of the injury." *Id.* "In the case of excessive use of force by prison guards, the objective component does not require any particular 'quantity of injury,' for '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.'" *Warren v. Purcell*, 2004 WL 1970642, at *7 (S.D.N.Y. Sept. 3, 2004) (quoting *Hudson*, 503 U.S. at 9). However, the Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (quotation omitted). "Indeed, not even

268 (2d Cir. 2009). In order to prove an Eighth Amendment violation based on an excessive use of force, a plaintiff must demonstrate each of the following two elements by a preponderance of the evidence: (1) the defendant used force against the plaintiff maliciously and sadistically, for the very purpose of causing the plaintiff harm; and (2) the plaintiff suffered some harm as a result of the defendant's use of force. *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992).

The first element is considered a subjective analysis of the defendant's state of mind at the time of the incident. This requires a showing that the defendant had "'the necessary level of culpability, shown by actions characterized by wantonness' in light of the particular circumstances surrounding the challenged conduct." *Goord*, 554 F.3d at 268 (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). Whether use of force against a prison inmate is unnecessary or wanton depends on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson*, 503 U.S. at 7).

The objective component considers the "seriousness of the injury." *Id.* "In the case of excessive use of force by prison guards, the objective component does not require any particular 'quantity of injury,' for '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.'" *Warren v. Purcell*, 2004 WL 1970642, at *7 (S.D.N.Y. Sept. 3, 2004) (quoting *Hudson*, 503 U.S. at 9). However, the Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (quotation omitted). "Indeed, not even

268 (2d Cir. 2009). In order to prove an Eighth Amendment violation based on an excessive use of force, a plaintiff must demonstrate each of the following two elements by a preponderance of the evidence: (1) the defendant used force against the plaintiff maliciously and sadistically, for the very purpose of causing the plaintiff harm; and (2) the plaintiff suffered some harm as a result of the defendant's use of force. *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992).

The first element is considered a subjective analysis of the defendant's state of mind at the time of the incident. This requires a showing that the defendant had "'the necessary level of culpability, shown by actions characterized by wantonness' in light of the particular circumstances surrounding the challenged conduct." *Goord*, 554 F.3d at 268 (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). Whether use of force against a prison inmate is unnecessary or wanton depends on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson*, 503 U.S. at 7).

The objective component considers the "seriousness of the injury." *Id.* "In the case of excessive use of force by prison guards, the objective component does not require any particular 'quantity of injury,' for '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.'" *Warren v. Purcell*, 2004 WL 1970642, at *7 (S.D.N.Y. Sept. 3, 2004) (quoting *Hudson*, 503 U.S. at 9). However, the Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (quotation omitted). "Indeed, not even

'every *malevolent* touch by a prison guard gives rise to a federal cause of action.'" *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (emphasis in original) (quoting *Hudson*, 503 U.S. at 9).

On the record before the Court, even accepting Plaintiff's version of events, no rational juror could find either of these elements satisfied. As to the subjective element, Plaintiff acknowledges that he had requested a haircut, and prison officials have a legitimate penological interest in maintaining "institutional . . . order." *Jova v. Smith*, 346 F. App'x 741, 744 (2d Cir. 2009). There is simply no evidence in this case that, to the extent Womack ordered Plaintiff to climb two flights of stairs and obtain his requested haircut, it was done solely for the purpose of inflicting harm, as opposed to maintaining internal order.

With respect to the objective element, there is no evidence that Plaintiff suffered any serious injury as a result of having to climb two flights of stairs. While Plaintiff testified that he experienced pain from climbing the stairs, there is no evidence that he was required to seek out medical treatment or suffered any long-term or ongoing consequences as a result of having to climb two flights of stairs on a single occasion. Moreover, there is no evidence that Womack ever touched Plaintiff, as opposed to issuing a verbal command, which is insufficient to establish an excessive use of force. *See Geer v. Lewis*, No. 9:14-CV-650 DNH/CFH, 2015 WL 224667, at *3 (N.D.N.Y. Jan. 15, 2015) (dismissing claim of excessive use of force based on alleged verbal command to carry broken typewriter back to cell because "there is no evidence that [the defendant] used any physical force. Instead,

he gave [the plaintiff] a direct, verbal order"). On this record, Plaintiff cannot maintain an excessive force claim.

## 2. Deliberate Indifference to Medical Needs

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners. . . .'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This category of Eighth Amendment violation also requires the satisfaction of objective and subjective elements. In the context of a deliberate indifference claim, the objective component requires that "the alleged deprivation of adequate medical care . . . be 'sufficiently serious,'" *Salahuddin*, 467 F.3d at 279 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)), while the subjective component requires that "the charged officials . . . be subjectively reckless in their denial of medical care," *Spavone*, 719 F.3d at 138. "An official acts with deliberate indifference when the official 'knows of and disregards an excessive risk to inmate health and safety.'" *Paul v. Bailey*, No. 09 CIV. 5784 RO, 2013 WL 2896990, at *3 (S.D.N.Y. June 13, 2013) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Here, Plaintiff argues in opposition to Defendant's motion for summary judgment that Womack ignored the doctor's orders that he was not to climb stairs. (*See* Dkt. 46 at 5). Disregard of a doctor's orders can form the basis for a deliberate indifference claim. *See Paul v. Bailey*, No. 09 CIV. 5784 RO, 2013 WL 2896990, at *4 (S.D.N.Y. June 13, 2013) (finding viable deliberate indifference claim where the defendants failed to follow physician's order that the plaintiff be provided special footwear); *Fonck v. Riggot*, No. 3:12-CV-896 RNC, 2012 WL 5408526, at *2 (D. Conn. Nov. 6, 2012) (finding viable claim

for deliberate indifference to medical needs where the defendants discontinued changing bandages in violation of physician's orders because "prison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors"). Moreover, while Womack claims that she was unaware of the flats order, Plaintiff testified that he showed it to her. The flats order is signed by a physician and specifically states that Plaintiff "[h]as [a] medical condition which prevents stair climbing." (Dkt. 46 at 15). On this record, the Court finds that a genuine issue of material fact exists as to whether Womack acted in deliberate indifference to Plaintiff's medical needs. A reasonable juror could conclude, were he or she to credit Plaintiff's version of events, that Womack knew that Plaintiff's physician had forbidden him from climbing stairs but that she nonetheless required him to do so, despite the danger posed by his multiple sclerosis and associated difficulties with ambulation. Accordingly, Womack is not entitled to summary judgment as to Plaintiff's claim for deliberate indifference to serious medical needs based on the haircut incident in June 2014.

C.   **The Commissary Incident**

Turning finally to the incident in June 2014 wherein Plaintiff fell while trying to retrieve his commissary purchases, the Court easily concludes that Plaintiff cannot maintain any manner of constitutional claim based on these facts. First, Plaintiff cannot maintain an excessive use of force claim or a deliberate indifference to medical needs claim for the straightforward reason that there is no evidence whatsoever that he was forced to climb the stairs to retrieve his commissary purchases on the date in question. To the contrary, the unrebutted evidence submitted by Defendants shows that Plaintiff's

commissary purchases were set to be delivered to him and that he voluntarily chose to climb the stairs.

Second, Plaintiff also cannot show that Scussim told the business office that Plaintiff did not have a "no stairs" pass. Scussim has denied this allegation under penalty of perjury, and Plaintiff admitted at his deposition that he had merely assumed it was Scussim and that it could have been someone else.

Finally, to the extent that Plaintiff is claiming that Womack generally prohibited him going to the commissary to collect his purchases, the Court has already held that "prisoners have no constitutional right to access a commissary." (Dkt. 4 at 3-4 (collecting cases and dismissing Plaintiff's claim that he was deprived of his commissary purchases).

For these reasons, the Court grants Defendants' motion for summary judgment with respect to the incident in June 2014 wherein Plaintiff fell on the stairs while attempting to retrieve his commissary purchases.

### III.  Claims Against Unserved Defendant B. Giles

Plaintiff's Amended Complaint (Dkt. 16) identifies "B. Giles, C.O." ("Giles") as a defendant. (*Id.* at 1). Giles is alleged to have been involved in the purported denial of meals to Plaintiff. (*Id.* at 10). Giles was never served (*see* Dkt. 36 (summons returned unexecuted)), and the time for service has long since expired.

Because he has never been served or appeared, Giles has not joined in the instant motion for summary judgment. However, the Court has already found that Plaintiff cannot assert a viable claim based on the alleged deprivation of meals, and that finding would apply equally to a claim against Giles. Under these circumstances, it is appropriate for the

Court to dismiss Plaintiff's claims as to Giles *sua sponte*. *See, e.g., McLennon v. N.Y.C.*, No. 13-CV-128 KAM SMG, 2015 WL 1475819, at *3 n.9 (E.D.N.Y. Mar. 31, 2015) ("As the court's rulings herein would apply equally to the non-moving defendants in this case, the court dismisses plaintiffs' false arrest and intentional infliction of emotional distress claims for failure to state a claim as to the non-moving and unserved defendants *sua sponte*."); *Salvani v. ADVFN PLC*, 50 F. Supp. 3d 459, 463 n.2 (S.D.N.Y. 2014) ("Defendant ADVFN and Defendant Doe have not yet been served. However, because Plaintiffs' claims against those defendants suffer from the same deficiencies as against InvestorsHub, the Court will treat the instant motion as if it were brought on behalf of all defendants."), *aff'd sub nom. Salvani v. InvestorsHub.com, Inc.*, 628 F. App'x 784 (2d Cir. 2015); *Smith v. Hogan*, No. 9:09-CV-639 GTS/RFT, 2011 WL 4478503, at *6 (N.D.N.Y. Aug. 2, 2011) (finding *sua sponte* dismissal of claims against unserved defendants appropriate where "[d]efendants are entitled to judgment as a matter of law"), *adopted*, 2011 WL 4478496 (N.D.N.Y. Sept. 26, 2011).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment (Dkt. 44) in part and denies it in part. In particular, the Court denies Defendants' motion for summary judgment solely with respect to Plaintiff's deliberate indifference to serious medical needs claim against Womack, and otherwise grants the motion in all respects. The Court further *sua sponte* dismisses Plaintiff's claims against defendant Giles. The Clerk of Court is directed to enter judgment in favor of defendants Kelly Smith, Ward, B. Giles, and Q. Scussim, and to terminate them as defendants in this matter.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: September 26, 2019
       Rochester, New York